UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

EUGENE GOBLE,                          )
                                       )
        Petitioner,                    )
                                       )
                                       )        No. 7:14-CV-58-ART-REW
v.                                     )
                                       )        RECOMMENDED DISPOSITION
CLARK TAYLOR, Warden,                  )
                                       )
        Respondent.                    )

* * * * * * * * * *

On April 4, 2014,[1] Petitioner, Eugene Goble, filed a *pro se* Petition for Writ of

Habeas Corpus under 28 U.S.C. § 2254. DE #1 (Petition). The Court conducted an initial

review of the filing and perceived the petition as untimely. The Court then ordered Goble

to address timeliness, directing a limited response by Warden Taylor. Both parties timely

responded. DE ##8 (Goble Response); 11 (Warden Taylor Response).

Having reviewed the filings under the applicable standards, the Court

**RECOMMENDS** that the District Court **DISMISS** the time-barred petition **WITH**

**PREJUDICE** and not issue a certificate of appealability. The petition is untimely under

the AEDPA's statute of limitations, the elusive *Schlup* exception does not here apply, and

nothing equitably tolled the statute of limitations.[2]

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-
13 (6th Cir. 2002) (per curiam). Here, Goble affirmed under penalty of perjury that he
placed the petition in the prison mailing system on April 4, 2014.  DE #1 (Petition) at 12.
[2] As part of its initial screening, the Court noted that Goble had failed to pay the filing fee
and ordered Goble to submit the filing fee or a complete *in forma pauperis* motion by
May 30, 2014. DE #2 (Order). On May 7, 2014, the Clerk received the filing fee. DE #5
(Receipt). Petitioner subsequently submitted a letter and separate documentation

The Court avoids restating again the wretched underlying facts. A Kentucky jury convicted Goble of multiple sexual offenses against his children, including two under the age of twelve. The state courts quite adequately catalogued the conduct. *See Goble v. Commonwealth*, No. 93-SC-88-MR (Ky. 1993) (unpublished), *available at* DE #11-2 at 9-11 (discussing facts and enumerating convictions).

## I.      Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "Act") subjects section 2254 petitions to a one-year limitation period. 28 U.S.C. § 2244(d). Specifically, the statute provides:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> > (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment

---

indicating that he did, in fact, pay the filing fee. DE ##6 (Letter); 7 (Prisoner Account Statement).

> or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id.* A Knott Circuit court jury convicted Goble on September 15, 1992.[3] DE #1 (Petition) at 1. The Kentucky Supreme Court affirmed his conviction (with one exception not here relevant) on October 28, 1993. *Goble v. Commonwealth*, No. 93-SC-88-MR (Ky. 1993) (unpublished), *available at* DE #11-2 at 9-21. No additional review followed. Thus, Goble's conviction became final long before the 1996 enactment of the AEDPA. Generally, "[p]etitioners whose convictions became final prior to the effective date of AEDPA, April 24, 1996, have one year from the effective date in which to file their petitions." *Searcy v. Carter*, 246 F.3d 515, 517 (6th Cir. 2001); *see also Bronaugh v. Ohio*, 235 F.3d 280, 284-85 (6th Cir. 2000) (noting that prisoners convicted before AEDPA's effective date had until April 24, 1997, to file a federal habeas petition). Goble did not file his federal habeas petition until 2014, **eighteen years** after the AEDPA became effective.

Goble filed a state habeas corpus petition in Knott Circuit Court on September 23, 1997.[4] While a timely RCr 11.42 motion normally tolls the AEDPA statute of limitations, an 11.42 motion does not restart the limitations clock for an already-barred claim. *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003); *see also Hulsman v. Rebecca Pancake*, No. 3:09-CV-P87-C, 2009 WL 1458239, at *2 (W.D. Ky. May 30, 2009) ("The tolling provision does not . . . 'revive' the limitations period (*i.e.,* restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations

---

[3] Goble's petition states that he was convicted on September 28, 1993, contrary to the judgment and agreed order amending the judgment. *See* DE #11-2 (Judgment) at 2-4; *id.* (Agreed Order) at 5-6.

[4] Per the state record, this ended with a state denial (on May 8, 2000) and no appeal.

period is expired, collateral petitions can no longer serve to avoid a statute of limitations." (internal quotation marks and citations omitted)). Thus, Goble's post-conviction state application is inadequate to toll the limitation period under § 2244(d)(2) because Goble filed it after the time for filing a federal habeas petition had long-since expired. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004); *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003); *see also Applegate v. Beckstrom*, 2011 WL 7168744, at *2 (E.D. Ky. Dec. 5, 2011) (Report & Recommendation), *adopted*, 2011 WL 404921 (E.D. Ky. Feb. 7, 2012).

Fourteen years after initiating the 1997 litigation, Goble filed a motion to set aside the original judgment pursuant to Kentucky Rule of Civil Procedure 60.02 and RCr 10.26. He made roughly the same arguments he now presents here, "actual innocence" and a nominal request for DNA testing. The trial court denied relief on November 14, 2011, *see* DE #11-2 (Order) at 61, and the Court of Appeals affirmed on April 12, 2013. *Goble v. Commonwealth*, No. 2012-CA-349-MR, 2013 WL 1488828 (Ky. Ct. App. April 12, 2013). The Supreme Court of Kentucky denied discretionary review on March 12, 2014. *See* DE #11-2 (Order) at 64.

Goble now raises federally the rejected 2011 state arguments, namely that there was insufficient evidence to support the convictions and that the trial court denied him the opportunity to present DNA evidence at trial. Goble defends the timeliness of the petition, alleging that "the new facts (law changes) first became discoverable on 3/22/2013." DE #1 (Petition) at 11. Specifically, Goble indicates that Governor Beshear signed House Bill 41 on March 22, 2013, which amended KRS § 422.285 to expand post-conviction DNA testing to certain non-capital offenses. *See* KRS § 422.285.

4

Goble presents three timeliness theories, each of which the Court now flatly rejects. He angles for the new "factual predicate" extension in § 2244(d)(1)(D). He separately argues for the *Schlup* "actual innocence" exception to AEDPA's operation (now further clarified in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013)). Finally, Goble advocates for application of equitable tolling under *Holland v. Florida*, 130 S. Ct. 2549 (2010). No new facts exist; Goble does not properly invoke *Schlup*; and, he fully fails to warrant equitable tolling.

## II.    The Case

A Knott Circuit Court jury convicted Goble of first-degree rape, two counts of incest, two counts of first-degree sodomy, and two counts of third-degree sodomy, all arising from sexual contact with four of his children (two of whom were under age 12). The trial court sentenced Goble to life imprisonment on the rape and first-degree sodomy counts, ten years of imprisonment on each of the two counts of incest, and five years of imprisonment on each of the two counts of third-degree sodomy. *Goble*, 93-SC-88-MR, *available at* DE #11-2 at 9-21.[5] On direct appeal, Goble claimed five total errors: (1) the prosecutor committed misconduct by improperly inciting the jury; (2) pursuant to the rule of lenity, the prosecutor should have charged Goble with incest, not first degree rape; (3) Dr. Bright, a state expert, testified improperly; (4) the trial court erred in overruling Goble's motion for a directed verdict on count 5, which charged incest with Melissa Goble; and (5) the trial court erred in refusing to instruct the jury on a lesser included

---

[5] The trial court ultimately amended the judgment upon the parties' agreed order. DE #11-2 (Agreed Order Amending Judgment) at 5-6. The original judgment contained a clerical error and ran each of the individual sentences consecutive to each other. The amended judgment ran the life sentences concurrent to each other and ran the sentences for the incest and third-degree sodomy convictions consecutive to each other but concurrent to the life sentences. *Id.*

offense of incest, *i.e.,* sexual abuse in the third degree. The Kentucky Supreme Court affirmed with the exception of Goble's fifth claim of error, failure to instruct on a lesser included offense on one count. *Id.* The Commonwealth did not retry Goble on the lone overturned count. *Goble*, 2013 WL 1488828, at *1 n.1.

Goble subsequently filed a *pro se* motion (centering on alleged ineffective assistance) pursuant to RCr 11.42 on September 23, 1997. DE #11-2 (RCr 11.42 motion) at 22-43. The trial court appointed counsel, conducted an evidentiary hearing, and fully denied the motion. Goble did not appeal. Over a decade later, Petitioner filed a motion under CR 60.02 and (alternatively) RCr 10.26, DE #11-2 (Motion) at 54-60, and the trial court again fully denied relief. DE #11-2 (Order) at 64. Goble appealed, and the Kentucky Court of Appeals affirmed the trial court. *Goble*, 2013 WL 1488828, at *2. On March 12, 2014, the Supreme Court of Kentucky denied discretionary review. DE #11-2 (Order) at 64. Goble subsequently filed the instant motion on April 4, 2014.

Goble now decries insufficient evidence to support his conviction and nominally alleges actual innocence. He further asserts a violation of the Fourteenth Amendment premised on alleged denial of a right to present DNA evidence at trial. DE #1 (Petition). The history and chronology of the case lead the Court first to the issue of petition timeliness. Goble contends that Kentucky House Bill 41, which amended KRS 422.285, entitles him to DNA testing, which will allegedly prove his actual innocence. Although the pleadings are murky on the issue, Goble seems to claim that March 22, 2013, is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." DE #1 (Petition); *see also* DE #8 (Response) (discussing standard but not identifying specific date). That seemingly is the

6

date on which Kentucky formally extended the statutory DNA testing protocol. Per Goble, the change in Kentucky law is new, would result in exculpatory evidence, and is the predicate for relief from AEDPA's statute of limitations.

### A.   Section 2244(d)(1)(D) does not apply.

In the underlying petition, Goble claims that the passage and enactment of House Bill (HB) 41 fits within § 2244(d)(1)(D). Goble's theory is that prior versions of KRS § 422.285 prevented him (as a non-capital defendant) from seeking DNA testing. With the passage of HB 41, Petitioner argues that all felons now have an option to seek post-conviction testing. Thus, per Goble, HB 41 is a new "factual predicate" for statutory tolling purposes. Warden Taylor does not address the argument in response. The Court easily dismisses the theory.

 Plainly, HB 41 is not a *factual* predicate. While the passage of HB 41 might be a changed or new *legal* predicate, subsection (D) refers only to a *factual* predicate. Courts have routinely denied relief on changes of this type. *Lo v. Endicott*, 506 F.3d 572, 576 (7th Cir. 2007) ("Though some state court judgments could potentially constitute a trigger for a new limitations period under AEDPA . . . we do not find that a state court decision modifying substantive law constitutes a factual predicate under § 2244(d)(1)(D) justifying a new one-year limitations period."); *Gray v. McDonald*, No. CV 12-4853 SVW, 2013 WL 6732662, at *4 (C.D. Cal. Dec. 16, 2013) ("To the extent petitioner may contend that the alleged effective repeal of California Penal Code sections 12022.5 and 12022.7 entitles him to a later accrual date under this subsection, he again would be incorrect because a change in law is not a 'factual' predicate and thus does not afford petitioner a later accrual date under Subsection D of Section 2244(d)(1)." (citing *Shannon*

*v. Newland*, 410 F.3d 1083, 1089 (9th Cir. 2005)); *see also Haish v. LeBlanc*, No. 05-2727, 2006 WL 3692752, at *2 (E.D. La. Dec. 11, 2006) (collecting cases and noting: "If a state court clarifies or changes state law in a case in which the federal habeas petitioner was not a party, and that subsequent legal determination is deemed a 'factual predicate,' then 'factual' would be meaningless." (citation omitted)); *Gates v. Schiro*, No. CV-06-2251-PHX-PGR, 2009 WL 249447, at *2 (D. Ariz. Feb. 2, 2009) ("The Court agrees . . . that a 'state-court decision establishing an abstract proposition of law arguably helpful to the petitioner's claim does not constitute the factual predicate for that claim' for purposes of § 2244(d)(1)(D)." (quoting *Shannon*)).

Here, Goble premises his relief request solely on a statutory change in Kentucky law; he asserts no new *facts* to support a claim of statutory tolling. By its express terms, § 2244(d)(1)(D) is limited to new facts. As such, Goble's claim for statutory tolling pursuant to § 2244(d)(1)(D) fails.

The Court further notes that, empirically, the possibility of DNA or other genetic testing certainly existed at the time of the original trial. Nothing would have prevented Goble from seeking such testing at the time, if a result may have been relevant, but nothing suggests he did so. That Kentucky has expanded post-conviction DNA does not mean a court should treat as novel the concept of DNA applicability in a particular case. Goble does nothing here to fit his argument within a statutory limitations exception.

### B. Goble fails to justify the extraordinary relief offered by *Schlup*—he is not "actually innocent."

"Actual innocence," properly shown, is a gateway around the AEDPA time bar. *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013) is the latest formulation and builds on the principles of *Schlup v. Delo*, 115 S. Ct. 851 (1995) and *House v. Bell*, 126 S. Ct. 2064

(2006). First, a few words about the gateway cases and their principles of application. The gateway, as a hedge against miscarriage of justice, has a high threshold. *Perkins* cautions "that tenable actual-innocence gateway pleas are rare[.]" *Perkins*, 133 S. Ct. at 1928; *see also House*, 126 S. Ct. at 2064 (calling *Schlup* "demanding" and a standard "rarely met"). Again, per *Perkins*, "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"). *Id.* at 1933 (quoting *Schlup*, 115 S. Ct. at 854).

The case meeting *Schlup* will be "extraordinary," *House*, 126 S. Ct. at 2077; per *House* and *Schlup*, "'to be credible' a gateway claim requires 'new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup*). The Court, based on the whole record, including evidence old and new, must make a "'probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* The rules of evidence do not apply to the totality assessment. *See id.*

Under *Schlup*, if a petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claim." *Schlup*, 115 S. Ct. at 861; *see also Connolly v. Howes*, 304 Fed. App'x 412, 416 (6th Cir. 2008). In other words, the court must determine "whether, in light of new reliable evidence, no juror acting reasonably would have voted to find the petitioner guilty beyond a reasonable doubt." *Tucker v. Rivera*, No. 3:11-CV-546-H, 2013 WL 752190, at

*6 (W.D. Ky. Jan. 24, 2013) (citing *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007)).

This threshold question does not look at the merits of the underlying habeas claim but simply turns on the credibility and impact of the newly presented evidence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical accounts – that was not presented at trial." *Schlup*, 115 S. Ct. at 865. In evaluating the new evidence, a court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Id.* at 869. A court does not make "an independent factual determination about what likely occurred," but instead assesses how the new evidence would have likely impacted a reasonable factfinder. *House*, 126 S. Ct. at 2077. *Schlup* imposes a "heavy burden on the petitioner," ensuring that "'the petitioner's case is truly "extraordinary," while still providing petitioner a meaningful avenue by which to avoid a manifest injustice.'" *Tucker*, 2013 WL 752190 at *6 (quoting *House*, 126 S. Ct. at 2077).

Goble stakes his actual innocence argument on the *anticipated* results of DNA testing. DE #8 (Response) at 4. Specifically, Petitioner states: "In this case at bar, the results of the requested DNA testing would be new evidence and also it would be exculpatory, which was not available in 1992[.]" *Id.* Respondent denies that Goble has produced new evidence, characterizing the petition as "ask[ing] the Court to sanction a fishing expedition to search for new evidence." DE #11 (Response) at 7.

It is important to view the theory in the context of the judgment. Goble received multiple convictions regarding sexual acts against four of his children. His DNA theory

addresses only daughter Jeanina. She testified to her belief—though she concededly was unsure—that Goble fathered her child at age 15, a child she then gave up for adoption. She indicated either Goble or her brother would have been the biological father. DE #11-2 (Trial Tr. Excerpt) at 8 ("Q.12 Jeanina, who is the father of that child? A For sure, I don't know. But I think it's my dad. Q.13 Who possibly -- is there any other possibility besides your father? A It could be Michael, my brother."); *see also id.* ("Q.14 Did you ever have sex with anybody else besides your father and Michael? A No. Q.15 What makes you think that it's your father's? A Because it happened more with him than it did with my brother."). The state case as to Jeanina did not require or involve proof of parentage by Goble, and none of the crimes required parentage for conviction. Even an exculpatory paternity result would have done no more than show that Goble did not father Jeanina's child; it would not have negated the assertion of sexual contact between Jeanina and her father. Such DNA proof, of course, would have had no impact on the rape or sexual abuse proof involving the other children.

Goble does not submit any evidence, only a hope (and not a well-grounded one) of exculpating DNA test results. Goble bears the burden under the gateway cases, and here obviously fails. In *Warren v. Norris*, No. 5:09cv303 JLH-JWC, 2010 WL 2038025 (E.D. Ark. April 30, 2010), the court rejected Warren's *Schlup* effort when the only "new" evidence was anticipated testimony of two witnesses, which was wholly unsupported by an affidavit or other reliable evidence. The court described one witness's potential testimony as "pure speculation" and found that the other witness's testimony would be cumulative. *Id.* at *6.   Further, the court observed that "[n]either potential witness's testimony is sufficient to 'affirmatively demonstrate that [Petitioner] is innocent

of the crime for which he was convicted,' as required for [the *Schlup*] exception to be applicable." *Id.* (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)). "Instead, the anticipated testimony would present additional matters for the jury to consider in assessing the credibility of the state's other evidence of guilt." *Id.*

Like *Warren*, Goble's efforts here are purely speculative. Further, and critically, the DNA evidence would not prove his actual innocence on any count of conviction; indeed, it at most could only prove that he did not father his grandchild. At the time Goble was convicted, a conviction for incest pursuant to KRS § 530.020 required only that the individual engage in "sexual intercourse with a person whom he knows to be a[] . . . descendant[.]" KRS § 530.020(1) (1992 ed.). The statute did not (and still does not) require that a child result from the prohibited sexual intercourse. Thus, DNA testing would not prove actual innocence of the underlying incest conviction(s). Goble's other counts of conviction (rape and sodomy) also would be unaffected by the results of DNA testing. At most, the DNA testing would prove that Goble's daughter Jeanina had a second sexual partner, something Jeanina conceded from this sad household. Thus, exculpatory DNA results would only present evidence for the jury to consider in evaluating the credibility of the Commonwealth's other evidence, including but not limited to Jeanina's testimony. *Schlup* demands much more.

Further, Goble does not show that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 115 S. Ct. at 868. At trial, Jeanina testified that she gave birth at age 15 and put the baby up for adoption. DE #11-2 (Trial Tr. Excerpt) at 7-8. Jeanina admitted that she was uncertain who fathered the child. She testified to having sex with both her father and her brother

and denied having sex with anyone else. Jeanina did, however, express her belief that her

father, the Petitioner here, is the father of the child "[b]ecause it happened more with him

than it did my brother." *Id.* Thus, the jury knew when it convicted Petitioner that he may

not be the baby's father. DNA proof would not have the consequence needed, and its

predictive character here undershoots *Schlup*.

> **C.  Goble fails to establish a basis for equitable tolling.**

Finally, Goble unsuccessfully bids for equitable tolling. The AEDPA statute of

limitations is not jurisdictional; therefore, equitable tolling is permissible in limited

circumstances. *See Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (citing *Day*, 126 S.

Ct. at 1681); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

The Sixth Circuit has succinctly stated the contours of the doctrine of equitable

tolling:

> "[E]quitable tolling relief should only be granted sparingly." *Souter v.
> Jones,* 395 F.3d 577, 588 (6th Cir. 2005) (quoting *Cook v. Stegall,* 295
> F.3d 517, 521 (6th Cir. 2002)). "The party seeking equitable tolling bears
> the burden of proving he is entitled to it." *Robertson v. Simpson,* 624 F.3d
> 781, 784 (6th Cir. 2010). Ordinarily, a petitioner is entitled to equitable
> tolling only if he shows "'(1) that he has been pursuing his rights
> diligently, and (2) that some extraordinary circumstance stood in his way'
> and prevented timely filing." *Holland v. Florida,* 130 S. Ct. 2549, 2562
> (2010) (quoting *Pace v. DiGuglielmo,* 418, 125 S. Ct. 1807 (2005)); s*ee
> also Hall v. Warden,* 662 F.3d 745, 749–50 (6th Cir. 2011) (same).

*Freeman v. Trombley*, 483 Fed. App'x 51, 55 (6th Cir. 2012).  The doctrine "allows

courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated

deadline unavoidably arose from circumstances beyond that litigant's control." *Plummer

v. Warren*, 463 Fed.  App'x 501, 504 (6th Cir. 2012) (citation and internal quotation

marks omitted).

In support of his request, Goble generally contends that he was unaware of his ability to seek post-conviction DNA testing. DE #8 (Response) at 5. Respondent denies that Goble demonstrates a right to equitable tolling, calling a "red herring" Goble's reliance on the 2013 amendment to KRS § 422.285. DE #11 (Response) at 5. Per Warden Taylor, Goble is not entitled to DNA testing under the revised statute.

Goble alleges nothing concrete in support of the blanket statement that he diligently pursued his rights. Per Petitioner, he requested DNA testing when he sought relief pursuant to CR 60.02 and RCr 10.26 in 2011. DE #11-2 (Motion) at 54-60. Goble's state motion does reference a generic request for DNA testing, *see id.* at 58, but that appears to be his first formal relief request related to the claim. Goble indicates that he "showed diligent [*sic*] in that he requested DNA testing to prove his actual innocence approximately 16 months before House Bill 41 was even signed into law by Governor Beshar" and when he appealed to the Kentucky Court of Appeals, *see* DE #8 (Response) at 2, but he describes no facts or circumstances outside his control that prevented him from seeking relief within the statute of limitations. He did not file for post-conviction relief here until nearly 17 years had elapsed after his deadline.

The Court stresses that equitable tolling again is a matter on which Goble has the burden. During the period between finality (January 26, 1994) and AEDPA expiration (April 24, 1997), Goble points to nothing he did in pursuit of his rights or claims. He shows no diligence during this critical period. He further points to nothing pre-expiration, of an extraordinary nature, that prevented timely filing. The Court notes that "[t]he lack of favorable law does not prevent the filing of [a] federal habeas petition; at most it may make the petition unsuccessful." *Jones v. Ryan*, No. CV-09-0926-PHX-DGC, 2010 WL

6572069, at *10 (D. Ariz. Dec. 6, 2010). While Goble may have chosen not to file until many years later, nothing that would, on this record, warrant equitable tolling kept him from doing so.

To the extent Goble relies on the 2013 KRS amendments, the Court is highly dubious that Goble is, in fact, entitled to DNA testing. Section 422.285(1)(a) does now extend to Class A felonies but expressly limits an offender's right to request DNA testing and analysis to "evidence that is in the possession or control of the court or Commonwealth, that is related to the . . . prosecution that resulted in the judgment of conviction and that may contain biological evidence." KRS § 422.285(a)(1). As the Commonwealth acknowledges, Goble's daughter testified to giving the subject child up for adoption at some point prior to the 1992 trial. Goble utterly fails (and indeed does not even attempt) to show how the child qualifies as responsive evidence under this section. Additionally, the Court again expresses concern over how testing would, in fact, prove Goble's innocence, a statutory testing value as well. DNA testing results clearing Goble as the child's father would not affect any count of conviction; that he did not father the child would not otherwise exonerate him. Goble evidently has not made the formal state request, but the Court sees the avenue as having no promise.

Equitable tolling is rare. *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004) ("Equitable tolling is permissible under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), although rare."); *Johnson v. Hudson*, 421 Fed. App'x 568, 571 (6th Cir. 2011).  In this case, forces outside Goble's control did not prevent him from timely presenting his claims, and Goble has not proven diligence. As such, the Court finds no basis for application of the doctrine in this case.

The DNA statute change may have prompted Goble's return to court, but that is different from an equitable justification for presenting stale theories.[6] No equitable foundation for tolling exists.

**III. Conclusion**

For all of the stated reasons, and premised on untimeliness, the Court **RECOMMENDS** that the District Judge **DISMISS** the petition **WITH PREJUDICE** and **DENY** a certificate of appealability.[7]

*   *   *   *   *   *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further

---

[6] For example, Goble asserts insufficiency of evidence on the rape first and sodomy first convictions. He argues failure to prove force. Such an attack on the state's case existed at the time of trial, did not occur, and is long-since time barred. Incidentally, Goble's perception that force is (or then was) an element of rape first or sodomy first simply is erroneous given the age of the victims. *See* KRS § 510.040(1)(b)(2) ("A person is guilty of rape in the first degree when: He engages in sexual intercourse with another person who is incapable of consent because he . . . is less than twelve (12) years old."); KRS § 510.070(1)(b)(2) ("A person is guilty of sodomy in the first degree when: He engages in deviate sexual intercourse with another person who is incapable of consent because he . . . . is less than twelve (12) years old."). The statutes, which remain unchanged from the time of the crimes, do not require force in this context.

[7] No certificate of appealability should issue because the timeliness result is not, on this record, fairly debatable. *See Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000) (requiring a petitioner to demonstrate, when a court dismisses on procedural grounds, that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling").

appeal to or review by the District Court and Court of Appeals. *Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 6th day of January, 2015.

**Signed By:**

**Robert E. Wier**

**United States Magistrate Judge**